**STATE OF WEST VIRGINIA**

*In re* **C.G.-1**

**No. 19-0180** (Logan County 18-JA-11-B)

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.G.-2, by counsel Mark Hobbs, appeals the Circuit Court of Logan County's January 15, 2019, order terminating his parental rights to C.G.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Rebecca E. Mick, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first employing less-restrictive alternatives and when the DHHR failed to make reasonable efforts to preserve the family.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother. According to the petition, the mother tested positive for drugs throughout her pregnancy and, upon giving birth to the child, tested positive for Neurontin. The child was reported to be experiencing withdrawal symptoms. The DHHR alleged that petitioner knew of the mother's substance abuse during the pregnancy and engaged in substance abuse with her. Family of the parents indicated that petitioner had a substantial substance abuse problem and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as C.G.-1 and C.G.-2, respectively, throughout this memorandum decision.

"will do any type of drugs that [he] can get [his] hands on and also use[s] needles." Petitioner waived his preliminary hearing.

Petitioner stipulated to having a substance abuse addiction that impaired his ability to properly parent the child and requested a post-adjudicatory improvement period in April of 2018. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and granted his request for a post-adjudicatory improvement period. As part of the terms and conditions of his improvement period, petitioner was ordered to (1) comply with the terms of his medically assisted treatment program, (2) submit to drug screens and pill/strip counts, (3) participate in in-home services such as parenting and adult life skills classes, (4) maintain contact with his counsel and the DHHR on a weekly basis, and (5) submit to a psychological evaluation and comply with the recommendations of the report.

Petitioner submitted to a psychological evaluation and the report was distributed in June of 2018. The evaluating psychologist opined that petitioner failed to acknowledge responsibility for the conditions of abuse that led to the filing of the petition and gave a pattern of responses to the assessments that suggested that he believed himself to be "exceptionally free of common short comings to which most individuals will admit." The psychologist concluded that petitioner's likelihood of attaining minimally adequate parenting was poor given his "history of drug use, his lack of acknowledgement of responsibility in the referral incidents, his apparent lack of veracity concerning recent drug use, his unstable employment history, and his defensiveness during the evaluation." Over the course of the next few months, the circuit court held several review hearings regarding petitioner's post-adjudicatory improvement period. The DHHR advised that petitioner was not successfully complying with the terms and conditions of his improvement period and, due to his noncompliance, had not consistently visited with the child. Eventually, the circuit court terminated petitioner's post-adjudicatory improvement period.

The final dispositional hearing was held in January of 2019. Petitioner failed to attend but was represented by counsel. Petitioner's counsel requested a continuance, which the circuit court denied. The DHHR presented the testimony of a Child Protective Services ("CPS") worker who reported that petitioner had not complied with his post-adjudicatory improvement period. Specifically, the worker testified that, although petitioner initially participated in treatment through a Suboxone clinic, he ceased attending the treatment program. Petitioner failed to present a valid prescription for Suboxone for several months and had never submitted to a strip count of his Suboxone. Further, petitioner failed to consistently submit to drug screens, which meant that his supervised visits with the child were terminated. Petitioner tested positive for drugs on the few occasions that he did submit to screens and failed to complete his parenting and adult life skills classes, maintain suitable housing, and gain employment.

After hearing evidence, the circuit court found that, despite the DHHR having made reasonable efforts to reunify the family, petitioner failed to take advantage of the services provided. Based upon petitioner's noncompliance throughout the entirety of the proceedings, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future and that termination of his parental rights was in the

child's best interest. It is from the January 15, 2019, dispositional order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. According to petitioner, he was "the victim of rash judgment," and the circuit court "simply proceeded to terminate [his] parental rights . . . too quickly." Petitioner avers that he initially complied with the terms and conditions of his improvement period and that the circuit court should have considered a less-restrictive alternative to termination of his parental rights, such as a post-dispositional improvement period. Petitioner also argues that the circuit court erred in finding that the DHHR made reasonable efforts to preserve the family, and contends that the DHHR should have provided him more assistance with housing, poverty, and addiction issues.[3] We disagree.

---

[2]The mother's parental rights were also terminated below. The child was placed in a foster home with a permanency plan of adoption therein.

[3]As part of his argument, petitioner contends that the current time frames for improvement periods make it impossible for drug-addicted parents to achieve sobriety and regain custody of their children. He avers that this Court should carefully consider "reshaping the current practice to address the issue of parental drug use."

Regarding improvement periods, this Court has noted that "[i]mprovement periods are . . . regulated, both in their allowance and in their duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally." *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000). We have noted that the requirements set forth in West Virginia Code § 49-4-610

(continued . . .)

Contrary to petitioner's argument, the record establishes that the DHHR did, in fact, make reasonable efforts. The DHHR provided petitioner with several services throughout his post-adjudicatory improvement period including random drug screens, assistance with drug treatment programs, parenting and adult life skills classes, assistance with transportation, a psychological evaluation, and supervised visitation. While petitioner alleges that the DHHR failed to adequately assist him with housing and substance abuse issues, we note that West Virginia Code § 49-4-610(4)(A) explicitly provides that "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." It is clear that the DHHR offered its assistance in helping petitioner achieve these goals, but he failed to maintain contact with the DHHR or request additional assistance. In fact, as of the dispositional hearing, the CPS caseworker testified that she had not heard from petitioner since before August of 2018. Accordingly, we find no merit in petitioner's argument that the DHHR did not make reasonable efforts to preserve the family.

---

> are not mere guidelines. . . . The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority. Discretion granted to the circuit court within this framework is intended to allow the court to fashion appropriate measures and remedies to highly complex familial and inter-personal issues—it does not serve as a blanket of immunity for the circuit court to manage abuse and neglect cases as its whim, personal desire, or docket may fancy.

*J.G.*, 240 W. Va. at 204, 809 S.E.2d at 463. Further, we have previously held that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 6, *In re J.G.*, 240 W. Va. 194, 809 S.E.2d 543 (2018) (quoting syl. pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996)). "Critically, '[a] parent's rights are necessarily limited . . . [as to improvement periods] because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto.'" *Id.* (quoting *Emily*, 208 W. Va. at 336, 540 S.E.2d at 553). Finally,

> the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). While petitioner argues that parents addicted to drugs need more time than the length of time prescribed by statute, our case law makes it abundantly clear that a parent's opportunity to continue to participate in an improvement period is not upheld to the detriment of the children. Accordingly, we find no error in this regard.

We further find no merit in petitioner's argument that the circuit court should have granted him a less-restrictive disposition such as a post-dispositional improvement period. Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when,

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Here, petitioner was granted a six-month post-adjudicatory improvement period. As such, in order to be granted a post-dispositional improvement period, he was required to demonstrate a substantial change in circumstances in addition to his likelihood of fully participating in an improvement period. However, in his brief on appeal, petitioner does not indicate where in the record he established any substantial change in his circumstances. Moreover, he fails to demonstrate that he was likely to fully participate in an improvement period. As noted above, the DHHR provided petitioner with numerous services including parenting and adult life skills classes, assistance with drug treatment programs, supervised visitation, drug screens, and a psychological evaluation. While petitioner submitted to the psychological evaluation, he did not comply with any of the resulting recommendations. Petitioner failed to attend his parenting and adult life skills classes, and left his Suboxone clinic and did not pursue any alternative treatment programs. He also tested positive for controlled substances on multiple occasions and, thus, was prohibited from visiting with his child. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Based upon petitioner's complete lack of compliance with the terms of his post-adjudicatory improvement period, we find no error in the circuit court's denial of petitioner's request for a post-dispositional improvement period.

Lastly, we find no error in the circuit court's decision to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) sets forth a situation in which "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected," including when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the

5

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The evidence set forth above also supports the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner failed to respond to or follow through with any rehabilitative efforts offered during the proceedings below. He failed to participate in parenting and adult life skills classes, failed to consistently submit to drug screens, tested positive for substances when he did submit to screens, failed to comply with any form of drug treatment, and failed to visit the child.

While petitioner argues that termination of his parental rights was not in the child's best interests, the guardian states that petitioner has no bond with his child. Indeed, petitioner's failure to comply with the terms of his improvement period prohibited him from visiting the child, resulting in the child's complete lack of bond with petitioner. The child has a strong bond with her foster parents and is in need of permanency and stability. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the conditions of abuse and neglect, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. Therefore, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 15, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6